UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES HUNT,

   Plaintiff,           Hon. Ellen S. Carmody

v.

                  Case No. 1:13-cv-145

COMMISSIONER OF
SOCIAL SECURITY,

   Defendant.
_____/

**OPINION**

   This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. On April 30, 2013, the parties agreed to proceed in this Court for all further proceedings, including an order of final judgment. (Dkt. #11).

   Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 45 years of age on his alleged disability onset date. (Tr. 171). He possesses a sixth grade education and worked previously as an industrial janitor, saw operator, and machine operator. (Tr. 18, 32).

Plaintiff applied for benefits on December 30, 2009, alleging that he had been disabled since December 9, 2008, due to diabetes, hepatitis, rectal bleeding, and anemia. (Tr. 171-81, 204). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 75-170). On October 17, 2011, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, David Holwerda. (Tr. 25-74). In a written decision dated November 7, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 11-19). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-3). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on December 31, 2010. (Tr. 13). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

# **RELEVANT MEDICAL HISTORY**[1]

On March 24, 2009, Plaintiff participated in a consultive examination conducted by Kathryn Kendall, Ph.D. (Tr. 401-05). Plaintiff reported that "at times he feels depressed," but was unable to indicate why he was unable to work. (Tr. 402). Plaintiff reported that his typical daily activities "consist of sleeping and basically doing nothing." (Tr. 403). Plaintiff reported that he prepares his own meals but "relies upon his roommate for cleaning and shopping." (Tr. 403). Plaintiff reported that he enjoys fishing and watching football. (Tr. 403). Plaintiff reported that he has twice been incarcerated and has a history of drug use and "consumes alcohol several days per week, generally drinking five or six beers." (Tr. 403). Plaintiff's affect was characterized as "depressed" but the results of a mental status examination were otherwise unremarkable. (Tr. 403-04). Plaintiff was diagnosed with depressive disorder and his GAF score was rated as 50.[2] (Tr. 405).

On January 26, 2010, Plaintiff reported to the emergency room complaining that "he has been having increasing racing thoughts." (Tr. 434). The doctor reported that Plaintiff had recently been examined in the emergency department after experiencing "some paranoid delusions." (Tr. 434). On this previous occasion, Plaintiff was given a short supply of Ativan which Plaintiff reported "helped." (Tr. 434). Plaintiff was, on this latter occasion, administered Zyprexa after which he quickly experienced "significant improvement in his thought process." (Tr. 434). The doctor also noted that Plaintiff had previously been instructed to schedule mental health treatment with Network

---

[1] As discussed below, Plaintiff's claim on appeal concerns the ALJ's assessment of his residual functional capacity. In this respect, however, Plaintiff is only challenging the ALJ's findings regarding his emotional (i.e., non-exertional) limitations. Accordingly, the discussion of the medical evidence will focus on Plaintiff's emotional impairments.

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

180, but that Plaintiff "never showed up." (Tr. 434).

On September 23, 2010, Plaintiff met with Dr. Dilijit Karayil. (Tr. 475-76). When the doctor asked Plaintiff the reason for his visit, Plaintiff stated that he wanted the doctor to "fill his disability papers." (Tr. 475). The doctor declined, noting that Plaintiff "has not been seen for over a year and thus we need to establish care." (Tr. 475). The doctor noted that Plaintiff has been "extremely noncompliant" in the past with treatment directives and that "he needs to follow up in the clinic and just not for filling his Social Security disability papers." (Tr. 476).

Treatment notes dated December 1, 2010, indicate that Plaintiff was experiencing only "mild" depression. (Tr. 466). Plaintiff also reported that "it is not difficult at all to meet home, work, or social obligations." (Tr. 466).

On March 23, 2011, Plaintiff began treatment with Dr. Mazhar Munir. (Tr. 537-38). Plaintiff reported that he was "not doing good with depression" and was "also hearing voices." (Tr. 537). Plaintiff was diagnosed with major depression and prescribed Prozac, Abilify, and Desyrel. (Tr. 537). On April 26, 2011, Dr. Munir reported that Plaintiff was "doing better." (Tr. 544). Treatment notes dated July 6, 2011, indicate that Plaintiff was "struggling with depression." (Tr. 543). Plaintiff's medication regimen was modified. (Tr. 543).

On August 24, 2011, Plaintiff was examined by Dr. Nadia Al-Gaboori with Pine Rest Christian Mental Health Services. (Tr. 551-54). Plaintiff reported that his medications "help with depression and anxiety and paranoia." (Tr. 551). Plaintiff appeared sad and depressed but the results of a mental status examination were otherwise unremarkable. (Tr. 553). Plaintiff was diagnosed with major depressive disorder, nicotine dependence, and alcohol dependence (in sustained

5

remission) and his GAF score was rated as 55.[3]  (Tr. 553-54).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national

---

[3] A GAF score of 55 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

[4] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from (1) lumbar radiculopathy; (2) diabetes mellitus; (3) essential hypertension; (4) chronic thrombocytopenia; (5) other disorders of the gastrointestinal system; (6) chronic liver disease; (7) alcoholism disorder; and (8) depression, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 13-15). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work[5] subject to the following limitations: (1) he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; (2) he can never climb ladders, ropes, or scaffolds; and (3) he can perform simple work. (Tr. 15).

The ALJ concluded that Plaintiff was unable to perform any of his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to

---

[5] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert David Holwerda.

The vocational expert testified that there existed approximately 24,500 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 34, 66). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The vocational expert also testified that even if Plaintiff were further limited to jobs with a sit/stand option, there still existed approximately 7,000 jobs in the state of Michigan which Plaintiff could perform. (Tr. 67-68). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

I.        **The ALJ's RFC Determination is Supported by Substantial Evidence**

Plaintiff raises a single issue on appeal, that the ALJ's RFC determination, with respect to Plaintiff's non-exertional impairments, is not supported by substantial evidence. Specifically, Plaintiff takes issue with the ALJ's conclusion that he can perform "simple work."

A. Function-by-Function Analysis

Plaintiff first argues that the ALJ, in assessing his RFC, failed to perform a function-by-function assessment of his ability to work. As Plaintiff accurately asserts, Social Security Ruling 96-8p provides that in determining a claimant's RFC, the ALJ must "assess [the claimant's] work-related abilities on a function-by-function basis." *See* Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 at *1 (S.S.R., July 2, 1996).

As the Sixth Circuit has recognized, however, while a "function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th Cir., Mar. 4, 2002) (citation omitted). Rather, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.* (citation omitted), *see also*, *Rudd v. Commissioner of Social Security*, 2013 WL 4767020 at *9 (6th Cir., Sept. 5, 2013) (SSR 96-8p merely requires the ALJ to "address a claimant's exertional and nonexertional capacities and also describe how the evidence supports her conclusions").

The ALJ discussed at length the evidence of record and how such supported his RFC determination. (Tr. 13-18). As the ALJ recognized, so long as Plaintiff "maintains medical compliance," he requires only "conservative treatment." (Tr. 17). As the ALJ further observed, none of Plaintiff's care providers have imposed upon Plaintiff non-exertional limitations that are inconsistent with the ALJ's RFC determination. (Tr. 16-18). While the Court does not question that Plaintiff experiences a certain degree of limitation, the ALJ's determination that Plaintiff can perform "simple work" is supported by substantial evidence. Accordingly, this argument is rejected.

B. *Ealy v. Commissioner of Social Security*

Plaintiff next argues that the ALJ's decision conflicts with the Sixth Circuit's decision in *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010). The Court disagrees.

Jimmy Ealy's application for disability benefits was denied by the Social Security Administration following a hearing before an Administrative Law Judge. *Id.* at 506. The medical record before the ALJ contained the conclusion by Dr. Scher that Plaintiff was limited to the performance of "simple repetitive tasks" in "[two-hour] segments over an eight-hour day where speed was not critical." *Id.* at 516. The ALJ expressly adopted this limitation. *Id.* The ALJ also found that Ealy "has moderate difficulties" with regard to concentration, persistence, or pace. *Id.* at 510. Despite expressly adopting the limitation articulated by Dr. Scher, the hypothetical question which the ALJ posed to the vocational expert stated, in relevant part, "assume this person [is] limited to simple, repetitive tasks and instructions in non-public work settings." *Id.* at 516.

The Sixth Circuit found that the ALJ's reliance on the response to this particular question was improper because the ALJ, having expressly adopted the limitation articulated by Dr. Scher, "should have included [in his hypothetical question] the restriction that Ealy could work two-hour work segments during an eight-hour work day, and that speed of his performance could not be critical to his job." *Id.* As the Sixth Circuit concluded, because "Ealy's limitations were not fully conveyed to the vocational expert," the ALJ's reliance on the vocational expert's testimony could not constitute substantial evidence. *Id.* at 516-17.

Contrary to Plaintiff's argument, the *Ealy* decision does not stand for the proposition that a finding that a claimant is limited to "simple work" is somehow legally deficient. *See, e.g., Clayton v. Astrue*, 2013 WL 427407 at *7 (S.D. Ohio, Feb. 1, 2013) (distinguishing *Ealy* and

10

limiting it to its facts); *Steed v. Astrue*, 2012 WL 1097003 at *9 (N.D. Ohio, Mar. 20, 2012) (same); *Alonso v. Commissioner of Social Security*, 2011 WL 4526676 at *11 (W.D. Mich., Aug. 8, 2011) (same); *McGaha v. Astrue*, 2012 WL 762176 at *5 (E.D. Ky., Mar. 7, 2012) (same). Rather, *Ealy* simply reiterates the long-held notion that if the ALJ relies on the response to a hypothetical question, such question must accurately portray the claimant's limitations and be consistent with the ALJ's express findings. *See, e.g., Clayton*, 2013 WL 427407 at *7; *Steed*, 2012 WL 1097003 at *9; *Alonso*, 2011 WL 4526676 at *11; *McGaha*, 2012 WL 762176 at *5.

In *Ealy*, the ALJ expressly adopted a specific limitation which he then failed to include in his hypothetical to the vocational expert. Here, no such shortcoming or inconsistency exists. The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 24,500 such jobs. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical question the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

### C. Social Security Ruling 00-4p

Finally, Plaintiff asserts that the ALJ's decision is invalid because the jobs identified by the vocational expert fail to sufficiently consider Plaintiff's limited education. Specifically, Plaintiff argues that the ALJ "failed, pursuant to SSR 00-4p, to address an inconsistency between the vocational expert's testimony and the DOT" concerning the education requirements of the jobs identified by the vocational expert.

Pursuant to Social Security Ruling 00-4p, if a vocational expert offers testimony that conflicts with information contained with the Dictionary of Occupational Titles (DOT), the ALJ "must resolve this conflict before relying on the [vocational expert's testimony] to support a determination or decision that the individual is or is not disabled." Social Security Ruling 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 at *4 (S.S.A., Dec. 4, 2000). Plaintiff asserts that the ALJ failed to comply with this requirement thus rendering improper and insufficient his reliance on the vocational expert's testimony.

The ALJ's duty to question a vocational expert whether his testimony conflicts with information contained in the DOT arises only "if the [vocational expert's] evidence appears to conflict with the DOT." *Lindsley v. Commissioner of Social Security*, 500 F.3d 601, 603 (6th Cir. 2009) (quoting S.S.R. 00-4p); *see also*, *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) (where no discrepancy between the DOT and the vocational expert's testimony has been identified, the ALJ "is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the [DOT]"); *Jones v. Barnhart*, 2005 WL 66072 at *12 (N.D. Ill., Jan. 10, 2005) (same).

When testifying as to the various jobs that an individual with Plaintiff's limitations could nevertheless perform, the vocational expert indicated that his responses were consistent with the DOT, with the exception of the discussion of a sit/stand option in the context of an alternative hypothetical question. (Tr. 66-71). With respect to Plaintiff's non-exertional impairments, the vocational expert's testimony was consistent with the DOT.

Moreover, Plaintiff (who was represented by counsel at the administrative hearing) had an affirmative obligation to question the vocational expert if he thought that the vocational

12

expert's testimony was inconsistent with the DOT. *See McLachlan v. Barnhart*, 2004 WL 2036294 at *12 (N.D. Ill., Sept. 8, 2004) ("SSR 00-04p does not place the sole duty on the ALJ to question the vocational expert regarding any inconsistencies with the DOT and to resolve any conflicts before relying on the vocational expert's testimony") (citing *Buchholtz v. Barnhart*, 98 Fed. Appx. 540, 546 (7th Cir. 2004)). Accordingly, it is recognized that identifying alleged discrepancies between the DOT and the vocational expert's testimony at this stage of the proceedings is inappropriate. *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("[r]aising a discrepancy [between the vocational expert and the DOT] only after the hearing, as Donahue's lawyer did, is too late"); *Jones v. Barnhart*, 2005 WL 66072 at *12 (N.D. Ill., Jan. 10 ,2005) (same) ("an ALJ must explain a discrepancy between the VE and DOT only when the discrepancy has been identified, and rasing a discrepancy after a hearing has ended is untimely"). Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**. A judgment consistent with this opinion will enter.

Date: January 30, 2014              /s/ Ellen S. Carmody
                                    ELLEN S. CARMODY
                                    United States Magistrate Judge